WALTER CROCKER AND NORMA CROCKER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Crocker v. Commissioner
Docket No. 1453-74.
United States Tax Court
T.C. Memo 1975-310; 1975 Tax Ct. Memo LEXIS 63; 34 T.C.M. (CCH) 1357; T.C.M. (RIA) 750310; October 14, 1975, Filed James D. O'Connell, for the petitioners. Daniel J. Westerbeck, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Chief Judge: Respondent determined a deficiency of $494 in petitioners' Federal income tax for the year 1972. In an amendment to his answer filed on April 3, 1975, the respondent claimed an increased deficiency of $693.06, or a total deficiency of $1,187.06 for that year. The only issue for decision is whether section 1034, [1] Internal Revenue Code of 1954, permits nonrecognition of gain realized on the sale of either or both of two residences owned by petitioners in 1972, both of which were sold by them in that year. This case was submitted by the parties on *64 a full stipulation of facts pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference and are adopted as our findings. The pertinent facts are summarized below. Walter and Norma Crocker (herein called petitioners) are husband and wife whose legal residence at the time of the filing of their petition in this proceeding was Milan, Michigan. They filed a joint Federal income tax return for the taxable year 1972 with the Internal Revenue Service. On April 27, 1965, petitioners purchased for $16,500 a home located at 300 Draper Street (herein referred to as the Draper property) in Pontiac, Michigan. During 1971 petitioners were both employed at the Truck and Coach Division of the General Motors Corporation in Pontiac, Michigan. However, in May, 1971, petitioners were transferred to another General Motors facility in Ypsilanti, Michigan. In order to live near their new work site, petitioners purchased a home on June 17, 1971, at 4145 Ruby Street (herein referred to as the Ruby property), in Ypsilanti for $35,250. Because of rising interest rates and the poor economic climate petitioners *65 did not sell the Draper property until June 29, 1972, for $24,900. Later, on July 26, 1972, petitioners sold their property on Ruby Street for $38,000, and rented a home for a year in Ypsilanti, beginning in August, 1972. On November 3, 1972, petitioners purchased a lot in Milan, Michigan (herein referred to as the Milan property), and on December 1, 1972, they contracted to have a house built on that lot for $47,750. Petitioners moved into their new home in Milan, Michigan on August 22, 1973, and have lived there since that time. Petitioners contend that they are entitled to nonrecognition of the gain realized on both sales transactions. They argue that there has been a transfer of basis from the Draper property to the Ruby property and from the Ruby property to the Milan property, and thus nonrecognition should be accorded each transaction. Respondent, on the other hand, contends that, at most, only one of the transactions can qualify for nonrecognition. He argues that the sales of the Draper property does not qualify for nonrecognition since (1) the applicable time limits of section 1034 were not complied with, and (2) the Draper property was not the "principal residence" of *66 petitioners from June 17, 1971, to July 26, 1972. We agree with the respondent. Section 1034(a), which is determinative on this question, provides that: [if] property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him after December 31, 1953, and, within a period beginning 1 year before the date of such sale and ending 1 year after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence. (Emphasis added) Section 1034 is mechanical in application. To qualify for nonrecognition, all the requirements of section 1034(a) must be met. First, the property being sold must be the taxpayer's principal residence. This requires a determination of which of petitioners' residences was their principal residence. Section 1.1034-1(c)(3)(i), Income Tax Regs. provides: [whether] or not property is used by the taxpayer as his residence, and *67 whether or not property is used by the taxpayer as his principal residence (in the case of a taxpayer using more than one property as a residence), depends upon all the facts and circumstances in each case, including the good faith of the taxpayer. The facts and circumstances in this case show that subsequent to June 17, 1971, when their place of employment moved to Ypsilanti, Michigan, petitioners spent most of their time at the Ruby property and that property became their principal residence. Second, the property must be sold by the taxpayer after December 31, 1953. Here, since both sales took place in 1972, neither transaction is disqualified by this limitation. Third, the "new residence" being purchased by the taxpayer must be purchased within a period beginning one year before and ending one year after the sale of the "old residence". Looking to the specific facts in this case, the dates of the purchases and sales of the Ruby and Draper properties are critical. For the sale of the Draper property to qualify for nonrecognition, the purchase of the Ruby property must have been made within a period beginning one year before and ending one year after the sale of the *68 Draper property. The Ruby property was purchased on June 17, 1971, while the sale of the Draper property did not take place until June 29, 1972, one year and 12 days later. We conclude that the sale of the Draper property does not qualify for nonrecognition because it does not fall within the specific time limits set out in the statute and it was not petitioners' principal residence at the time of its sale. The sale of the Ruby property, however, does qualify for nonrecognition. It was sold on July 26, 1972, and the petitioners purchased and began construction of the Milan property on December 1, 1972. In that transaction the Ruby property was petitioners' principal residence at the time of sale, and the construction of the Milan property began well within the established time limits for commencing constructing of a "new residence". Thus the petitioners are entitled to nonrecognition of the gain on that transaction under section 1034(c)(5). Petitioners attempt to avoid the effect of section 1034 by resorting to what they refer to as the transfer of basis theory. Their argument is as follows: The Draper property was purchased in 1965. Petitioners lived there until 1971, when their *69 jobs were relocated and moved to Ypsilanti, Michigan. Dur to the long commuting distance from the Draper property to Ypsilanti, they needed a home near their new place of work. They purchased the Ruby property on June 17, 1971, but due to the economic picture and rising interest rates, they were unable to sell the Draper property for what they considered to be a fair price. On June 10, 1971, they took a second mortgage on the Draper property in order to raise money to enable them to purchase the Ruby property. Petitioners had a hard time keeping up with mortgage payments on two homes, and put both houses up for sale. When the Draper property was sold on June 29, 1972, petitioners used part of the sales price to pay off the second mortgage, and used the balance towards the purchase of the Milan property. Petitioners argue that these facts support their claim for nonrecognition in both sales transactions. They assert that any capital gain realized from the sale of the Draper property should be nonrecognizable since the gain was reinvested in the Ruby property and the balance remaining after the sale of the Draper property was applied to the purchase price of the Milan property. Petitioners *70 feel that it is unfair to penalize them for not selling the Draper property within the applicable time limits since the economic climate at the time made it very difficult to sell at a reasonable price. The statute, however, clearly provides certain specific guidelines which must be met for the nonrecognition provisions to apply. The gain from the sale of the Draper property must be recognized for the two reasons previously mentioned--it was not petitioners' principal residence at the time of the sale and it was sold more than one year after the purchase of the Ruby property. While we realize that the application of a hard and fast rule here may operate to deprive petitioners of the benefits of nonrecognition which most taxpayers receive when they sell their old home and buy a new one, we cannot disregard the plain language of the statute. We are not unmindful of the fact that the Tax Reduction Act of 1975 (P.L. 94-12) lengthened the period in which an individual must replace his personal residence in order to qualify for the nonrecognition of gain provisions of section 1034. For personal residences which are sold after December 31, 1974, the replacement residence must now be bought *71 within 18 months before or 18 months after the date of sale of the old residence. But this change only affects personal residences sold after December 31, 1974, and thus is not applicable to this case. Accordingly, we hold that the petitioners qualify for nonrecognition of the gain realized on the sale of the Ruby property, but the sale of the Draper property does not so qualify. Cf. Robert G. Clapham,63 T.C. 505 (1975), on appeal (9th Cir. 1975), which is clearly distinguishable on its facts. To reflect this conclusion, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩